# CIRCUIT COURT OF THE CITY OF ROANOKE

Buford Hodges

 v.

Norfolk Southern
Railway Co.

August 16, 2001

Case No. CL97-805

BY JUDGE ROBERT P. DOHERTY, JR.

Plaintiff claims he was injured while working as an employee for Norfolk Southern Railway by noxious gas inhaled while he was welding near a battery frame. The railroad investigated Plaintiff's claim and determined that he was not injured, committed fraud, and fired him. Plaintiff now seeks to present evidence through an economist that he has past, present, and future wage losses, all based on the income he was receiving prior to being fired by the railroad. Defendant's Motion in Limine seeks to prevent that testimony because the Defendant had been fired, or in the alternative, to present evidence of an internal administrative hearing which determined that the Defendant was fired for fraud. Plaintiff argues that he should be able to present his evidence as planned, without mention of the firing or of the administrative determination of fraud.

The second issue presented is that defense counsel, during a deposition, asked an expert witness to divulge to him the conversations that Plaintiff's counsel had with the expert prior to the deposition. Plaintiff's counsel objects contending that it is only proper for defense counsel to question the expert concerning any facts or information given to him by Plaintiff's counsel that may have influenced his expert opinion. Plaintiff's counsel argues that if Defendant is allowed to question the expert witness about the questions Plaintiff's counsel had asked him prior to the deposition, it would give Defendant an unfair insight into defense counsel's overall legal strategy and

an insight into his concerns of the strength of specific facts or factual conclusions.

## Railroad Wages

A Plaintiff may recover in an FELA action, damages for "any loss of earnings, fringe benefits, and lessening of earning capacity, or either, [that he] may reasonably be expected to sustain in the future." *CSX Transportation v. Casale*, 247 Va. 180, 184 (1994). Lost future wages and lost future earning capacity are separate items. Earning capacity does not necessarily mean the actual earnings that one who suffers an injury was making at the time the injuries were sustained, but refers to that which, by virtue of the training, the experience, and business acumen possessed, an individual is capable of earning. See *Aivaliotis v. Steamship Atlantic Glory*, 214 F. Supp. 568 (E.D. Va. 1963).

The Virginia Supreme Court has stated that "in order to form a reliable basis for a calculation of lost future income or loss of earning capacity, such evidence must be grounded upon facts specific to the individual whose loss is being calculated." *Bulala v. Boyd*, 239 Va. 218, 233 (1990). Ordinarily, the wages a person earned prior to an injury are an indicator of the person's income and earning capacity in the future. See *Hall v. Norfolk Southern Ry.*, 829 F. Supp. 1571 (N.D. Ga. 1993). In *Hall*, the Court allowed the Plaintiff to testify as to his past wages as evidence of his earning capacity prior to his injury, as an indictor of that individual's future earning capacity.

The Plaintiff seeks more than the mere admissibility of his former salary. He seeks to admit into testimony, through his expert or through his own testimony, future lost income based on Plaintiff's former salary. Whether this is permissible depends on the type of foundation laid at trial. The Court cannot predict what facts will be introduced at trial. Ordinarily, in determining lost earning capacity and lost earnings, an economist will consider factors such as a Plaintiff's (1) life expectancy, (2) remaining work life expectancy, (3) work history prior to the accident, and (4) wages expected. See *Clark v. Chapman*, 238 Va. 655 (1989). In this case, if a witness testifies that the Plaintiff could have obtained a job at another railroad performing the same work, except for the injury to his lungs, or if a witness testifies that Plaintiff could have obtained a job anywhere with that same income, except for his lung injury, then that should be a sufficient foundation for using the Plaintiff's previous salary as an indicator of his future lost earning capacity and lost earnings. Under these circumstances, evidence that Plaintiff had been fired from his railroad job would not be admissible because it would be irrelevant.

Counsel are cautioned that if either thinks that a sufficient foundation has or has not been raised, they should, before presenting evidence of the Plaintiff's being fired because of fraud, first discuss the matter with the Court outside the presence of the jury in order to prevent a mistrial.

*Plaintiff's Counsel Pre-Deposition
Discussion with Expert*

The questioning of the expert witness concerning what that expert discussed with Plaintiff's counsel prior to the deposition would provide an unfair advantage to Defendant. The answer to such a question "would reveal [Plaintiff's] counsel's trial tactics and thoughts by way of showing [Defendant] exactly what the [Plaintiff] feels is and is not important to his case." *Shanholtzer v. Dean*, 51 Va. Cir. 493 (2000). It is permissible for counsel for Defendant to ask the expert witness what if any information he obtained from counsel for the Plaintiff that affected his expert opinion. If the information divulged by the expert is information or documents already in the possession of counsel for Defendant, then the inquiry is concluded. To allow any further questioning would invade Plaintiff's counsel's legal strategy, which parallels in substance his work product. "Discovery was hardly intended to enable a learned profession to perform its function on wits borrowed from the adversary." *Hickman v. Taylor*, 329 U.S. 495 (Justice Jackson, concurring) (1947).

As Judge McGrath points out in *Shanholtzer*, relying on the opinion of Judge Hughes in *Mills v. MCC Behavioral Care, Inc.*, 37 Va. Cir. 225 (1995), "the cases that have allowed such questions during depositions are irrelevant to the issue at hand; they are Federal cases that rely on a Federal rule of evidence that Virginia has not adopted. Since the Commonwealth of Virginia still relies on its common law for the rules of evidence and since, in this instance, the question serves no other purpose than invading defense counsel's work product [and/or legal strategy], the Defendant's motion to compel is denied."